UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CLEAROBJECT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00581-SEB-MKK |
| | ) | |
| PAIRED, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO DISMISS OR TO TRANSFER**

Now before the Court is Defendants' Motion to Dismiss or to Transfer [Dkt. 14]. Defendants Paired, Inc. and Paired Pay, Inc. (collectively, the "Paired Entities") contend pursuant to Federal Rule of Civil Procedure 12(b)(2) that this court lacks personal jurisdiction over them thereby necessitating dismissal of Plaintiff ClearObject Inc.'s ("ClearObject") complaint, or in the alternative, a transfer of the cause of action to the District of South Carolina pursuant to 28 U.S.C. § 1404.

**Factual Background**

Defendant Paired, Inc. is a Wyoming corporation with its principal place of business in Wyoming. Defendant Paired Pay, Inc. is a Wyoming corporation with its principal place of business in South Carolina. Neither Defendant is a citizen of Indiana, is registered to do business in Indiana; owns or rents any real property in Indiana; has employees or agents who are Indiana citizens; has employees or agents who have physically visited Indiana in any official capacity; specifically advertises in Indiana; or intentionally solicits business for Indiana residents or companies.

1

Paired and Paired Pay were formed in October 2020 and February 2021, respectively, by their parent company, Black Ink Technologies Corporation ("Black Ink"). Black Ink is a Wyoming corporation with its principal place of business in Massachusetts. Black Ink develops hardware and software business-management products and offers those products through "Product Companies" or "Platform Companies," which companies include Paired and Paired Pay.

Plaintiff ClearObject, Inc. is a Delaware limited liability company with its principal place of business in Indiana. In January and February 2020, Ron Felice, who was at that time a ClearObject employee who lived in South Carolina, twice physically visited Black Ink's South Carolina Offices on ClearObject's behalf. Prior to these meetings, Black Ink and ClearObject had not had any other contact or business arrangement. At one of the meetings Mr. Felice "whiteboarded" with Black Ink the development work that ClearObject proposed to provide to Black Ink. As a result of these meetings, Black Ink began negotiating with ClearObject to provide development services. These negotiations began in person with Mr. Felice in South Carolina and continued remotely by phone, Zoom, and email. In addition to the January and February meetings, Mr. Felice visited Black Ink's South Carolina office one other time in 2020. We have been provided no other details regarding the third in-person visit.

As a result of these initial negotiations, ClearObject and Black Ink executed a Nondisclosure Agreement ("NDA") prepared by ClearObject. This NDA had a venue selection clause listing Marion County, Indiana, or the Southern District of Indiana and further provided that the parties "hereto consent to personal jurisdiction of the courts in

Marion County, Indiana, including the U.S. District Court for the Southern District of Indiana." Dkt. 16-1, Exh. 1-A. ClearObject's then-President executed the NDA on behalf of ClearObject on January 27, 2020. Jeremy Blackburn, Black Inc's Chief Executive Officer, executed the NDA on February 3, 2020. Following the execution of the NDA, ClearObject presented Black Ink with a proposed Statement of Work ("Black Ink SOW"), that included among other services to be performed by ClearObject a two-day workshop that would be held at ClearObject's headquarters in Fishers, Indiana. The Black Ink SOW was never executed, however.

Mr. Felice was furloughed on March 31, 2020, and laid off from ClearObject on June 24, 2020, as a result of the COVID pandemic. Following Mr. Felice's departure from ClearObject, ClearObject and Black Ink continued the negotiations that had been initiated by Mr. Felice, regarding the work ClearObject proposed to perform. During that time, "ClearObject sent a number of proposals to do work for Black Ink Tech Product Companies or Platform Companies." Dkt. 17-1 ¶ 16. These negotiations eventually resulted in the Statement of Work ("SOW") and Change Requests at issue in this litigation.

The initial drafts of the SOW were prepared by ClearObject and listed ClearObject and Black Ink as the contracting parties. Black Ink informed ClearObject that, consistent with its standard practice, ClearObject's engagement would not be with Black Ink, but with a Platform Company that Black Ink would create for purposes of the engagement. In line with this practice, Black Ink formed Paired on October 19, 2020, and requested that ClearObject replace all references to Black Ink with Paired in the draft SOW.

ClearObject did so, and the SOW was executed between ClearObject and Paired on January 8, 2021. The address listed on the SOW for Paired is 3900 Leeds Avenue, Suite 102, North Charleston, SC 29403. This is the same location Mr. Felice visited when he initially solicited Black Ink's business. The SOW identified ClearObject's location as Fishers, Indiana.

The SOW provided that each party to the contract "[wa]s responsible for the identification of, interpretation of, and compliance with, any applicable laws, regulations and statutes that affect[ed] its applications or business." Dkt. 8-1 at 16. The SOW also included a section titled "Disclosure" which provided that "[t]he fully executed Subscriber and ClearObject Mutual Confidentiality NDA will apply to this SOW." *Id.* The parties dispute whether this is a reference to the NDA ClearObject executed with Black Ink.

Around March 31, 2021 and April 1, 2021, two of ClearObject's employees, Scott Herren and Noel Hopkins, made an in-person visit to the 3900 Leeds Avenue address in South Carolina to discuss an accelerated project plan pursuant to the SOW. These discussions eventually resulted in the July Change Request at issue in this litigation. The July Change request was signed by Paired Pay, which had been created by Black Ink in February 2021 for the continued and expanding engagement with ClearObject. The parties also engaged in discussions regarding a Project Change Request Form in April 2021, which was executed pursuant to the SOW effective April 15, 2021 (the "April Change Request"). The initial draft of the April Change Request listed ClearObject and Paired as the contracting parties, but because the April Change Request dealt with a

function to be managed by Paired Pay, all references to Paired in the April Change Request were ultimately changed to Paired Pay.

On January 27, 2022, ClearObject filed the complaint in this case in Hamilton Superior Court, alleging breach of contract and unjust enrichment claims based on Defendants' alleged failure to pay for the services ClearObject provided under the SOW and its amendments. Defendants removed the case to this Court on March 24, 2022, and, on April 29, 2022, filed the pending motion to dismiss or to transfer to the District of South Carolina.

On January 31, 2022, four days after ClearObject filed its complaint in state court, Paired Pay filed a companion breach of contract lawsuit against ClearObject in the Court of Common Pleas for Charleston County in South Carolina, alleging that ClearObject breached the July Change Request. ClearObject removed the action to the District of South Carolina on March 31, 2022 and moved to dismiss or to transfer the action to this district. On June 14, 2022, the District of South Carolina denied ClearObjects' motion to dismiss, holding that it has personal jurisdiction over ClearObject. The court declined to consider ClearObject's alternative request to transfer at that time, given the pending motion to dismiss or to transfer in our case.

We turn now to address Defendants' Motion to Dismiss or Transfer, that motion being fully briefed and ripe for ruling.

## Legal Analysis

**I.        Motion to Dismiss for Lack of Personal Jurisdiction**

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking.  When "[a] defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citations omitted). In making this determination, the court will "read the complaint liberally, in its entirety, and with every inference drawn in favor of" the plaintiff.  *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (citation and quotation marks omitted).  When, as here, a district court rules on a defendant's motion to dismiss based on the submission of written materials, the plaintiff "need only make out a *prima facie* case of personal jurisdiction" and "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record."  *Id.* at 876, 878. (internal citations omitted).

In order to properly determine whether an exercise of personal jurisdiction is appropriate over a non-resident defendant, the court must undertake and satisfy a two-step analysis.  First, the court must determine whether its exercise of jurisdiction over the defendant comports with the forum's long-arm statute.  Assuming that first step is satisfied, the court must then determine whether this exercise is authorized by the Due Process Clause of the Constitution.  *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012) ("The court's exercise of jurisdiction over the defendant must be authorized by the terms of the forum state's personal-jurisdiction statute and also must comport with the requirements of the Fourteenth Amendment's Due Process Clause.").  Because Indiana's

long-arm statute "reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the [f]ederal Due Process Clause," we need only discuss the second step of this analysis. *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006); Ind. Trial R. 4.4(A).

Due process subjects a defendant to personal jurisdiction in a particular state only if the defendant has "certain minimum contacts with [that state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be either general or specific. Here, ClearObject does not argue that the Court has general personal jurisdiction over it. Rather, it contends that the Paired Entities are subject only to specific jurisdiction; accordingly, we focus on the specific-jurisdiction inquiry.

A finding of specific jurisdiction requires, first, that the defendant have "certain minimum contacts with [the forum state]." *Int'l Shoe Co.*, 326 U.S. at 316. Minimum contacts are established for the purposes of specific jurisdiction "where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The requirement of purposeful availment allows potential defendants to reasonably anticipate conduct for which they may be haled into court in a foreign jurisdiction. *Burger King*

7

*Corp.*, 471 U.S. at 472. These minimum contacts must "comport with traditional notions of 'fair play and substantial justice'" as required by the Fourteenth Amendment's Due Process Clause. *Id.* at 476 (quoting *Int'l Shoe Co.*, 326 U.S. at 316).

Where, as here, the plaintiff asserts that specific jurisdiction arises from a contract, the court must "consider the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' in determining whether there were sufficient minimum contacts." *Citadel Group Ltd. v. Washington Regional Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008) (quoting *Burger King*, 471 U.S. at 479). The fact that the contract is between a state resident and a non-resident does not automatically establish sufficient minimum contacts for personal jurisdiction. *Id.* In evaluating these factors, the district court may consider: (1) who initiated the transaction; (3) where the contract was entered into; (3) where the performance of the contract was to take place; and (4) where the contract was negotiated. *Id.* at 762.

These factors, properly applied, demonstrates that the Paired Entities have not engaged in the type of meaningful, purposeful contact with Indiana that would subject them to suit in this district. ClearObject was the entity that solicited a business relationship with the Paired Entities, through its negotiations with Black Ink. Mr. Felice, the ClearObject employee who initiated those negotiations was not Indiana-based; instead, he was a resident of South Carolina. Prior to Mr. Felice's solicitation of Black Ink, there was no relationship between the parties. Thus, we cannot say that the Paired Entities (or Black Ink) "deliberately reache[d] out beyond [their] home state to avail

8

[themselves] of the benefits" of doing business with an Indiana company. *Bodine Elec. Co. v. Viking Access Sys., LLC*, No. 09 C 3055, 2009 WL 5173490, at *3 (N.D. Ill. Dec. 17, 2009).

Additionally, the contract at issue was negotiated and performed primarily remotely, with the only in-person contact being three visits by ClearObject employees to Black Ink/Paired/Paired Pay's offices *in South Carolina*. These in-person visits were not made at the behest of Black Ink or the Paired Entities and were financed by ClearObject. Neither of the Paired Entities nor Black Ink ever sent a representative to Indiana to meet with ClearObject employees and ClearObject has not presented evidence showing that the employees the Paired Entities dealt with after Mr. Felice was furloughed and laid off were Indiana-based. These facts, while not solely dispositive, are relevant in demonstrating the absence of personal jurisdiction. *See, e.g.*, *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 496 (7th Cir. 2014) (affirming dismissal for lack of personal jurisdiction where the "contracts at issue were formed remotely or in the nonforum state"); *Indigo Olive Software, Inc. v. Country Vintner, Inc.*, No. 14 C 8157, 2015 WL 3545262, at *4 (N.D. Ill. June 3, 2015) (stating that the fact that "[a]ll communication between defendant and plaintiff's CEO took place via email and telephone," with no request from the defendant that plaintiff visit the defendant's facility, coupled with the fact that the plaintiff directed that the only payment made under the contract be sent to the non-forum state, "strongly indicate[d] that neither the terms of the contract nor the course of dealing created sufficient contacts" with the forum state).

It is true, as ClearObject argues, that after the SOW was signed, the Paired Entities had ongoing dealings electronically and by mail with ClearObject, an Indiana-based company, in fulfillment of the contract. However, "[a] defendant's knowledge that the plaintiff's company has its principal office in a certain state and that correspondence can be directed to that office is not alone sufficient to avail itself to the laws and protections of that state." *Indigo Olive Software*, 2015 WL 3545262, at *3. It is significant that the work that ClearObject contracted to perform for the Paired Entities to our knowledge bore no particular relationship to Indiana, nor did the SOW provide that the work was to be performed in Indiana.[1] Rather, the contract stated that "[w]ork under this SOW will be performed at a Subscriber location and remotely." SOW § 5.3(4).

The remote work was performed by ClearObject employees based in several different locations, including Indiana, South Carolina, Michigan, New York, Texas, and Ukraine. The fact that the SOW left ClearObject in control over where it performed under the contract is further evidence of no purposeful availment. *See Lakeside Bridge & Steel Co. v. Mountain State Const. Co., Inc.*, 597 F.2d 596, 603 (7th Cir. 1979) (holding that were "the contract between the parties [leaves the plaintiff] in absolute control over where it" performs, the mere fact that the defendant contracts with a forum-state resident

---

[1] ClearObject argues that the unsigned Black Ink SOW "reveals that the parties' negotiations pointed to Indiana" because it "required that a workshop be performed at ClearObject's headquarters in Fishers, Indiana." Dkt. 16 at 11. However, the Black Ink SOW was not negotiated between the parties; rather, it was a "proposed statement of work" that ClearObject "presented" to Black Ink and which was never executed. *Id.* at 5. Such "unilateral activity of the plaintiff" is not relevant to the jurisdictional inquiry. *See Purdue Res. Found.*, 338 F.3d at 780 ("[I]t must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity.").

10

"does not constitute an invocation of the benefits and protections of [the forum state's] laws"); *Indigo Olive Software*, 2015 WL 3545262, at *3 (in declining to exercise personal jurisdiction, noting that "[t]erms stating that work would be performed in [the forum state] or that a final product would be sent to defendant from [the forum state] are notably absent").

ClearObject argues that, although the SOW does not contain an express selection provision re Indiana law, the SOW's "Laws, Regulations, and Statutes" section does require that each party be "responsible for the identification of, interpretation of, and compliance with, any applicable laws, regulations and statutes that affect its applications or business." SOW § 5.4. ClearObject maintains this language "necessarily required ClearObject to perform pursuant to Indiana law." Dkt. 16 at 12. This provision, however, does not require either party to adhere to any particular state's law. Rather, it merely requires that each party to the contract be responsible for its own legal compliance. Even if it could be considered a choice-of-law provision, such provisions, while relevant to the minimum contacts analysis, "standing alone" are "insufficient to confer jurisdiction." *Burger King*, 471 U.S. at 482.

In support of its argument that the Court should exercise personal jurisdiction over the Paired Entities, ClearObject also relies heavily on the fact that Black Ink signed a non-disclosure agreement in February 2020—before either of the Paired Entities existed—pursuant to which Black Ink consented to personal jurisdiction in the Southern

11

District of Indiana.² ClearObject argues that the Black Ink NDA was incorporated into the SOW and the subsequent change requests at issue in this litigation, and thus, that the Paired Entities are bound by their parent company's forum selection and consent to personal jurisdiction in this District as reflected in the NDA. For the following reasons, we disagree.

It is a "general principle" of contract law that incorporation of another document into a contract requires "a clear reference to the document and a description of its terms so its identity may be ascertained." *Baumann v. Finish Line, Inc.*, 421 Fed. App'x 632, 634 (7th Cir. Apr. 28, 2011). Here, the SOW signed between Paired and ClearObject provides that it incorporates "[t]he fully executed *Subscriber* and ClearObject Mutual Confidentiality NDA." SOW § 5.2 (emphasis added). The SOW elsewhere defines "the Subscriber" as "Paired, Inc." SOW § 1.0. Accordingly, by its plain terms, the SOW at issue in this litigation does not incorporate the NDA signed by Black Ink. *See* Black Ink SOW § 5.2 (referring to the NDA signed by Black Ink as "[t]he fully executed *Black Ink Tech* and ClearObject Mutual Confidentiality NDA") (emphasis added).

Nor by its terms is the Black Ink NDA otherwise binding or otherwise controlling as to the Paired Entities. The Black Ink NDA provides that it is binding "upon the parties [ClearObject and Black Ink], their heirs, executors, administrators, employees, agents, successors or assigns," but this list does not include "subsidiaries" or "affiliates." Dkt.

---

² Unlike subject matter jurisdiction, "[c]hallenges to personal jurisdiction may be waived by either express or implied consent." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1290 (7th Cir. 1989).

16-1, Exh. 1-A.  While Black Ink is undisputedly related to Defendants Paired and Paired Pay, they are each separate corporate entities and ClearObject does not argue that the Court should treat them otherwise.  We therefore find no legal basis for imputing Black Ink's forum selection and consent to personal jurisdiction in the Southern District of Indiana to its subsidiaries.  *Compare, e.g.*, *Heckler & Koch, Inc. v. German Sport Guns GmbH*, 976 F. Supp. 2d 1020, 1032 (S.D. Ind. 2013) (agreement was "binding upon and inure[d] to the benefit of the Parties and their respective parents, subsidiaries, successors and assigns").

In sum, the record demonstrates that the Paired Entities did not take deliberate, purposeful acts such that they should have expected to be subject to jurisdiction in Indiana.  Having found, for these reasons, that ClearObject has failed to show that the Paired Entities have sufficient minimum contacts with Indiana to subject them to suit in the Southern District of Indiana, we lack personal jurisdiction over Defendants.  Defendants' motion to dismiss is thus meritorious.  Under the facts of this case, however, rather than dismiss the lawsuit, we will exercise our discretion under 28 U.S.C. § 1404 to transfer this case to the District of South Carolina.

## II. Motion to Transfer

In cases such as this in which personal jurisdiction over the defendants is lacking, the matter can be transferred pursuant to 28 U.S.C. § 1404(a) in the interest of justice.  *See Coté v. Wadel*, 796 F.2d 981, 984–85 (7th Cir. 1986).  Given that a substantially similar action involving these parties currently pends in the District of South Carolina and that court has already held that personal jurisdiction is proper there, coupled with the

fact that this case sits only at the pleading stage and transfer rather than dismissal protects against any potential time bar, we find that it is in the interest of justice to transfer this action rather than dismiss it.

### III. Conclusion

For these reasons, we <u>DENY</u> Defendant's motion to dismiss and <u>GRANT</u> Defendants' alternative motion to transfer this case to the District of South Carolina [Dkt. 14].

IT IS SO ORDERED.

Date: 2/10/2023

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jacob V. Bradley
QUARLES & BRADY LLP (Indianapolis)
jacob.bradley@quarles.com

Mary Kate Hetzel
DINSMORE & SHOHL LLP (Indianapolis)
marykate.hetzel@dinsmore.com

Daniel R. Kelley
DINSMORE & SHOHL LLP (Indianapolis)
daniel.kelley@dinsmore.com

Sarah Thompson Parks
Quarles
sarah.parks@quarles.com

Joel E. Tragesser
QUARLES & BRADY LLP
joel.tragesser@quarles.com